IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>  vs.<br><br>$39,506.00 UNITED STATES CURRENCY,<br><br>                Defendant. | Civil No. 8:25CV516<br><br>**COMPLAINT FOR FORFEITURE *IN REM*** |

The United States of America, for its cause of action against the Defendant property, pursuant to Rule G(2) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, states and alleges as follows:

### Nature of the Action

1. This is an action to forfeit property to the United States for violations of 21 U.S.C. § 881.

### The Defendant *in rem*

2. Defendant property is $39,506.00 United States Currency seized by law enforcement from a vehicle operated by Jaquanie Moore during a traffic stop on westbound Interstate 80 near mile marker 439 on March 10, 2025.

3. The United States Marshals Service currently has custody of the Defendant property.

### Jurisdiction and Venue

4. This Court has subject matter jurisdiction for an action commenced by the United States pursuant to 28 U.S.C. § 1345, and for an action for forfeiture pursuant to 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action pursuant to 21 U.S.C. § 881.

5. This Court has *in rem* jurisdiction over the Defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## Basis for the Forfeiture

7. Defendant property, $39,506.00 United States currency, is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money, negotiable instruments, securities and other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 2) proceeds traceable to such an exchange, and/or 3) money, negotiable instruments and securities used and intended to be used to facilitate a violation of the Controlled Substances Act.

## Facts

8. On March 10, 2025, DEA TFO Matthew Keenan ("TFO Kennan") was working as part of the Metro Area Interdiction Team in Sarpy County, NE and observed a 2013 Suspect vehicle F-150 ("suspect vehicle") bearing Illinois plate 3995009B make a series of illegal lane changes in violation of Neb. Rev. Stat § 60-6,139 ("Driving on roadways laned for traffic").

9. TFO Keenan subsequently performed a traffic stop on the suspect vehicle on westbound Interstate 80, near mile marker 439.

10. TFO Keenan approached the suspect vehicle and detected the odor of marijuana.

11. TFO Keenan identified the driver of the target vehicle as Jaquanie Moore ("Moore") and the front seat passenger as Tommy R. Spaulding ("Spaulding").

12. Two juvenile males (11 and 14 years of age) were also located in the back seat of the suspect vehicle.

13. TFO Keenan explained the reason for the traffic stop and requested paperwork for the suspect vehicle.

14. Moore appeared nervous and when asked if the vehicle was hers, she replied it was a friend's vehicle.

15. Spaulding retrieved the paperwork in the glove compartment for TFO Keenan.

16. TFO Keenan asked Moore to accompany him to the cruiser and Moore complied.

17. While seated in the cruiser, Moore stated the vehicle was not hers but was a friend's car. TFO Keenan asked her friend's name and Moore hesitated and said "Tanesia" and said she was a family friend.

18. Moore stated that she and the other occupants in the suspect vehicle were coming from Omaha and headed to Lincoln.

19. Moore stated that they spent the night before at her aunt's house and it was near the Westroads Mall.

20. Moore stated that the front occupant was Spaulding and the juvenile boys in the rear were her son and Spaulding's son.

21. TFO Keenan asked where "Tanesia" was and Moore stated she was in Chicago and not in the vehicle.

22. Moore stated that "Tanesia" leaves the suspect vehicle in Lincoln, Nebraska for her to use.

23. Moore stated she was a home health care worker in Lincoln, Nebraska.

24. Moore believed Tanesia's last name was Riley.

25. The registered owner of the suspect vehicle was Brown, Andrea D, 11411 S Morgan St., Chicago, Illinois.

26. Moore was asked if she was certain about the ownership of the suspect vehicle, and she stated that the suspect vehicle really belonged to "Tanesia's" mom but did not know her name at all.

27. Moore stated that she got the suspect vehicle a few days ago (Saturday).

28. Moore stated the suspect vehicle was parked in Lincoln, Nebraska and no one else was using it.

29. Moore then stated she was doing "no funny business."

30. Moore stated that her car had many mechanical issues and that was the reason she was driving the suspect vehicle.

31. Moore was pressed on the address of her aunt in Omaha and all she could say was by the Westroads Mall.

32. TFO Keenan asked Moore if she knew any side street or anything that could describe the area where her aunt lives and where they stayed.

33. Moore was unable to provide any details on a residence for her aunt.

34. Moore stated she lived in Lincoln, Nebraska and Spaulding lived in Chicago, Illinois.

35. TFO Keenan conducted a data check on Moore and then went to the suspect vehicle to speak to Spaulding.

36. Spaulding stated that they were coming from Chicago, Illinois.

37. Spaulding stated they left early that morning and drove through the night.

38. TFO Keenan returned to the cruiser and again asked Moore about where they were coming from and she again stated Omaha, Nebraska.

39. TFO Keenan confronted Moore about the discrepancies about their whereabouts.

40. Moore then told TFO Keenan that Spaulding told her to lie to TFO Keenan and state they stayed in Omaha.

41. TFO Keenan asked if there was any marijuana within the suspect vehicle and Moore stated "No weed in the car actually. The smoke is from the car. The dog will smell some from yesterday."

42. Moore stated that they were shopping in Chicago, Illinois for 2 days and the truck bed of the suspect vehicle was full of shopping bags and food.

43. Moore stated they went to Chicago, Illinois to buy a dirt bike for her son, but ended up not buying it.

44. Moore stated she had the suspect vehicle for 2 days and went to Chicago, Illinois from Lincoln, Nebraska and then left Chicago, Illinois around 1:00 a.m. – 2:00 a.m. on March 10, 2025.

45. Moore denied any illegal narcotics within the suspect vehicle.

46. Moore then stated she had a vape pen in her purse.

47. Moore denied having any weapons within the suspect vehicle.

48. Moore denied having any large amounts of U.S. currency within the suspect vehicle.

49. Moore stated no one gave her anything to transport.

50. Moore was asked if she had any objections to TFO Keenan searching the suspect vehicle and Moore replied "No because you already have probable cause."

51. Based on the totality of circumstances surrounding the traffic stop, TFO Keenan became suspicious of Moore due to TFO Keenan's training and experience in identifying criminal activity.

52. TFO Keenan returned to the suspect vehicle and spoke to Spaulding and again smelled a strong odor of marijuana.

53. Spaulding was asked to exit the suspect vehicle before the probable cause search.

54. Spaulding was then patted down for weapons and TFO Keenan could feel a large bulge in each front pocket of Spaulding's pants.

55. Through training and experience, TFO Keenan knew that the bulge in each pocket was consistent with currency.

56. Spaulding was asked to remove the currency, and he complied.

57. TFO Keenan observed 2 large bundles of U.S. currency that Spaulding removed from Spaulding's pants.

58. Spaulding stated he believed it was approximately $6,000.00 in U.S. currency.

59. A search of the suspect vehicle by TFO Keenan revealed marijuana rolling papers in the front center console.

60. TFO Keenan located Moore's purse and in there was a small bundle of U.S. currency (approx. $400.00)

61. In the rear seat of the suspect vehicle, TFO Keenan located a blue duffle bag filled with some men's clothing and a large sum of U.S. currency on the bottom of the bag.

62. The U.S. currency was rubber banded in what appeared to be in $1,000.00 increments.

63. In the truck bed of the suspect vehicle, TFO Keenan located a large duffle bag filled with men's clothing and shoes along with large unused plastic garbage bags within the duffle bag.

64. Spaulding said that the U.S currency was from cars he sells in Nebraska and Illinois and income tax return money.

65. The suspect vehicle, along with Moore, Spaulding, and the 2 juveniles, were driven to the impound lot for follow up.

66. At the impound lot, TFO Keenan was assisted by OPD Narcotics unit and DEA special agents.

67. During the follow up, TFO Keenan was informed by OPD Ofc. Sundermier the U.S. currency from the duffle bag, Spaulding's pants and Moore's purse was swabbed for testing.

68. The swabs of the U.S. currency taken from Spaulding's pants and duffle bag, both came back to having traces of cocaine on them.

69. The swab taken from the U.S. currency in Moore's purse came back with no drug traces detected.

70. Moore stated to TFO Keenan that her money was used to purchase items for her children.

71. Inside Moore's purse were receipts, from stores in Chicago, Illinois, which showed purchases for her children.

72. Moore denied knowledge of Spaulding's money.

73. Moore stated that Spaulding is a "big fat liar."

74. A discretionary sniff of the U.S. currency was conducted by Omaha Police Department Sgt. Pignotti and his KP Brutus.

75. TFO Keenan was informed by Sgt. Pignotti that K9 Brutus alerted and indicated to the odor of narcotics on the U.S. currency belonging to Spaulding.

76. Spaulding and Moore were given a receipt from TFO Daryl Krause of the items being seized pending further investigation.

77. TFO Keenan transported all items seized to Omaha Police Department property division for a count of the U.S. currency.

78. Omaha Police Department property division personnel conducted 2 counts of the U.S. currency, and the following results were reported:

    129 one-hundred-dollar bills totaling $12,900.00

    61 fifty-dollar-bills totaling $3,050.00

    1080 twenty-dollar-bills totaling $21,600.00

    142 ten-dollar-bills totaling $1,420.00

    106 five-dollar-bills totaling $530.00

    6 one-dollar-bills totaling $6.00

79. The total U.S. currency counted and booked into property was $39,506.00.

80. The U.S. currency was sealed by Omaha Police Department property division personnel in 3 separate bags (each with an itemized receipt).

81. All 3 bags were then sealed into 1 large bag and that was booked into property by TFO Keenan.

82. Other items booked into property were cell phones and receipts from Moore.

83. On May 27, 2025, the DEA received a timely claim from Spaulding.

84. In his claim form, Spaulding claimed an interest in all of the seized U.S. currency and stated that he was the owner of the U.S. currency.

85. Spauling did not provide any information as to the source of the funds at the scene of the traffic stop.

86. On May 27, 2025, the DEA received a timely claim from Moore, through her attorney Jason Troia.

87. In her claim form, Moore claimed an interest in $9,500.00 of the U.S. currency and stated that she is the owner of $9,500.00 of the U.S. currency and that it was obtained "based on child tax credits through the federal and state governments."

88. Moore did not provide any documentation to substantiate her claim.

89. The $39,506.00 in U.S. currency seized from a suspected drug couriers showed no evidence that it was ever engaged in legitimate business.

## Claim for Relief

WHEREFORE the United States of America prays the Defendant property be proceeded against for forfeiture in accordance with the laws, regulations and rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulations; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

LESLEY A. WOODS
United States Attorney

By:   s/ Kimberly C. Bunjer
KIMBERLY C. BUNJER, #20962
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, NE  68102-1506
Tel: (402) 661-3700
Fax: (402) 345-5724
E-mail:  kim.bunjer@usdoj.gov